Bissell, J.,
delivered the opinion of the court.
The plaintiffs in error brought suit against Bateman and his codefendants for the specific performance of the following contract :
“I hereby agree to sell to T. B. Wilson and C. E. Smith, my home place, 157 acres, and to give them or their assigns a good title to same in consideration of the sum of $6,000, to be paid as follows: $3,000 cash and balance to be paid in one, two and three years at 8 per cent payable annually. This agreement good for thirty days from date. Possession not to be given until Jany. 1, 1891.
“James M. Bateman.”
It will be observed the contract does not state a consideration paid by the plaintiffs, and that it lacks any promise on their part to take and pay the purchase price, except at their election. They did not sign it, and in all of its aspects it is unilateral. According to the record, the obligees took no possession under it, nor did they either offer or tender performance until after Bateman had sold the property to his codefendants. The prospective purchasers were informed of the sale prior to the time of any tender, and were notified by *337 Bateman that he declined to carry it out, and retracted his offer. It is probably true Bateman made no attempt to notify them of his intended retraction until after the sale, and the parties came to him to inquire what he had done. We regard this as wholly unimportant, because it is exceedingly clear from the testimony Smith and Wilson were then told the property had been sold, and Bateman would decline to carry out his arrangement, which he then rescinded. On the hearing, the bill was dismissed, and error is assigned.
The principal proposition urged is that the contract was sufficiently executed to satisfy the requirements of the statute of frauds, and that it is therefore a binding contract, enforcible against Bateman as well as against the purchasers. It is likewise insisted there was no such evidence or revocation as is essential to destroy whatever rights Smith and Wilson acquired when they received the option. We cannot assent to either proposition. We do not see the force of the argument respecting the statute of frauds, and"are exceedingly clear that what occurred between Bateman and the purchasers was an ample notice to them of the retraction of the offer, and that Bateman only exercised the rights which the law gave him to recede from it and sell the property to other parties. There was a good deal of testimony offered to the point that at the time the contract was made, Bateman reserved the right to sell to others, providing he should find a purchaser. This we regard as of little importance, since the case is easily disposed of on the general proposition that since the contract was unilateral, executed without any consideration paid by the obligees, and rescinded before an offer to perform, specific performance of the agreement cannot be compelled. This whole subject has been very carefully considered by the supreme court in an analogous case, and its opinion is entirely decisive of the present suit. In the case cited, a similar contract was interpreted to be simply a continuing offer to sell, which, of course, was capable of conversion into a valid contract, either by tender of the purchase money, or performance of the conditions within the proper *338 time, if in the meantime the seller had not withdrawn his offer. Under any other circumstances, or any other conditions, such contracts were held not to be enforcible. Gordon et al. v. Darnell, 5 Colo. 302.
This case is undoubtedly in harmony with all the authorities, and is clearly decisive of the present suit. Accepting it as the law, we must necessarily affirm the judgment.

Affirmed.